GEORGE M. WESTON, *Petitioner for Mandamus, versus* NATHAN DANE, *Treasurer of State of Maine.*[*]

By the terms of the constitution, no money can be drawn from the treasury, but by warrant from the Governor and Council, and in consequence of appropriations made by law.

In the absence of an appropriation and warrant, the Court will not issue a *mandamus* to the treasurer to command the payment of money from the treasury, under any circumstances.

A resolve of the Legislature, authorizing the Governor and Council, to fix the compensation of an agent of the State for prosecuting claims, is no appropriation.

A copy of the vote of the Governor and Council fixing such compensation, attested by the secretary of state, is not the warrant contemplated by the constitution.

As no action can be maintained against the State, the Court will not permit a claim to be enforced circuitously by *mandamus* against the treasurer.

[*] This case was argued at Portland.

Weston *v.* Dane.

PETITION FOR MANDAMUS, notice of which was served upon the *State Treasurer* and *Attorney General.* The case was submitted to the Court upon the petition, answer, replication, and an agreed statement of facts, which are sufficiently stated in the opinion.

*Joseph H. Williams,* for petitioner.

If the amount was held by respondent for the use of the State, to be got out only as all other money in the treasury can legally be got out, by appropriation and warrant, still petitioner was entitled to it.

What is an appropriation?

"It is not setting apart a particular heap of dollars for a particular officer." Reverdy Johnson, *arguendo* in *Thomas v. Owens,* 4 Maryland, 214.

As the Court say, in that case, — "obviously the purpose of the constitutional provision for a legislative appropriation is to prevent the expenditure of the people's treasure *without their consent.*" *Ibid,* 225.

Evidence of *their consent* in this case is to be found in the resolve of March 26, 1858, coupled with the order in council of October 13, 1860, which made the amount of appropriation definite.

The two acts together constitute "an appropriation by law."

"An act is as essentially accomplished by law when performed pursuant to a statute, as if consummated by the statute itself." *People v. Edwards,* 15 Barb., S. C., 529 – 534.

So the *Legislature* of 1860 must have regarded them; else what necessity for interference by the resolve of March 19?

What is a sufficient "warrant?"

Simply a direction in writing from the Governor and Council (who in this State are auditing officers) to pay a claim recognized by them, with a reference to the legislation authorizing its payment. This is the substance of all war-

rants issued by the Governor and Council, and the order in council of October, 1860, amounts to that.

*Drummond, Attorney General,* for respondent.

The opinion of the Court was drawn up by

APPLETON, J.—The State of Maine, having a claim against the United States for expenses in organizing a regiment for the Mexican war, on the 26th March, 1858, passed a resolve authorizing the Governor, with advice of Council, "to establish, by commission or otherwise, the compensation of the commissioner at Washington, appointed under resolve approved March 17, 1855; but no compensation shall be allowed the commissioner unless it be taken from allowances made by the general government on claims prosecuted by him," &c.

On the 13th Oct., 1860, an order in council was passed and approved by the Governor, "that the commission of George M. Weston, for his compensation in procuring an allowance from the United States for expenses in organizing a regiment for the Mexican war, known as the Mexican claim, be established at twenty per cent. of the amount *received by the State* on said claim, and said compensation to be taken from the amount so received."

The petitioner prosecuted the claim of the State so ably and successfully, that $10,308,28, was obtained from the United States and paid into the State treasury, on which sum his commissions would be $2061,66.

Of this amount the petitioner has received $1061,66, and a check of B. D. Peck, former treasurer of State, drawn upon its funds in bank. This check was passed to the credit of Peck in his individual capacity, he being at that time indebted to the petitioner in about that sum.

It is the payment of this sum of $1000, which the petitioner seeks to enforce by mandamus.

It is provided by the constitution of the State, art. 5, part 4, § 4, "that no money shall be drawn from the treasury,

*but by warrant from the Governor and Council,* and in consequence of *appropriations* made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published at the commencement of the annual session of the Legislature."

The resolve of the Legislature and the subsequent action of the Governor and Council can, if viewed most favorably for the petitioner, be regarded only as a contract between him and the State as to the amount of compensation to be paid him in case of his successful prosecution of the Mexican claim. If a contract, as the State is not suable at the instance of its citizens, the only remedy for the petitioner would be by resort to the Legislature, which, it is to be presumed, will pay a just regard to the equitable right of the petitioner. It was no appropriation. If it were so, then every contract made by the Governor and Council, or the Land Agent, or any other State officer, in pursuance of a statute authorizing the making of such contract, would be an appropriation. But it is not so. The Legislature, by their resolve, authorized the Governor and Council to establish the commission to be allowed the agent of the State, and they acted in pursuance thereof.

By the terms of the order, the whole amount was to be paid to, and in fact it was received by the State, and from the amount so received the compensation was to be taken. The money, when received, was in the State Treasury as much as any other money from any other source, and being there, it could not be drawn out except in pursuance of the provisions of the constitution.

If the money were to be regarded as the money of the plaintiff in the hands of the defendant as an individual, it is obvious the petitioner is not entitled to the writ prayed for. His common law remedies are ample for the enforcement of his rights.

But even if the resolve of March 26, 1858, were to be deemed an appropriation, it could not by its own force affect funds coming into the treasury two years after the official

existence of the Legislature, by which it was passed, had ceased.

The constitution further requires a warrant from the Governor and Council, to justify the treasurer in making any payment. This is indispensable. Without it the treasurer cannot legally make a payment. No warrant has been issued.

It is well settled law that no action can be maintained against the State. The Court cannot sanction an evasion of this principle. As was remarked by Mr. Justice WOODBURY, in *Reeside* v. *Walker*, 11 How., 290, "They could not, therefore, permit the claim to be enforced circuitously by *mandamus* against the Secretary of the Treasury, when it could not be directly against the United States; and when no judgment on and for it had been obtained against the United States." The same reasoning, with equal force, exempts the defendant from all liability in the present case.

The petition, stripped of the specious disguise thrown around it by the able argument of counsel in its support, asks us to command the treasurer to pay money in violation of the clear and distinct provisions of the constitution, by virtue of which he and we exercise the several trusts reposed alike in him and in us. The writ is denied.

*Petition dismissed.*

TENNEY, C. J., RICE, DAVIS, GOODENOW and WALTON, JJ., concurred.